**Mattie Mae PAUL, Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 22, 1984.

Application for Permission to Appeal Denied by Supreme Court Aug. 27, 1984.

Barry B. White, Lewisburg, for plaintiff-appellant.

William T. McHugh, Ben C. Fordham, Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

The determinative issue in this case is whether a group accident insurance policy which provided that coverage would be "effective on the first day of the month next following receipt of application" was in effect four days after an employee signed up for the policy with her employer. Plaintiff employee Mattie Mae Paul insists the policy was in effect. Defendant insurer, Insurance Company of North America, insists that the policy was not effective until the first day of the month following "receipt of the application."

This case is before this Court on appeal from a summary judgment for defendant and the facts are not in dispute. Plaintiff has been employed by Durango Boot Company, a subsidiary of U.S. Industries, Inc., in Chapel Hill, Tennessee, since 1972. The defendant offered a group accident policy to employees of U.S. Industries effective October 1, 1974. Plaintiff did not enroll immediately but did apply for family coverage on June 4, 1982. Her husband was killed in an automobile accident on June 8, 1982.

When plaintiff signed the enrollment form on June 4, 1982, her employer gave her a booklet explaining the policy and coverage and containing a Certificate of

Insurance. The booklet-certificate was issued by the defendant.

The Certificate of Insurance does not specify when the policy is effective. However, the first paragraph of the Certificate states that the insurance is "subject to the terms, conditions and limits of liability of the policy as above specified...." A clear statement appears on the preceding page of the booklet that the "insurance will take effect on the first day of the month after receipt of your application." On the page immediately after the Certificate in the booklet, under the word "important", printed in capital letters, is the statement: "If any conflict should arise between the content of this booklet-certificate and the Master Policy ...,' the terms of the Master Policy will govern in all cases." The Master Policy provides that "individual insurance shall not become effective until the first day of the month next following the date the application is received during any enrollment period." The Master Policy also provides that "in computing the premium, no charge or credit will be made for fractional parts of a policy month with respect to additions, deletions or changes in classification of insured."

After her husband's death, plaintiff filed a claim for benefits under the policy she had applied for on June 4th. She was informed by her employer that she could not collect. On or about August 14, 1982, she received an extra nine dollars [1] in her paycheck. Plaintiff's attorney returned the nine dollars and the employer again gave the nine dollars to plaintiff, saying that plaintiff was not entitled to benefits under the policy.

Plaintiff filed suit to collect benefits under the policy. Both sides moved for summary judgment under Rule 56, Tenn.R. Civ.P. The Trial Court, determining that there was no genuine issue of material fact, granted defendant's motion and overruled plaintiff's motion.

In group insurance cases, the primary contract is between the insurer and the employer. *Davis v. Metropolitan Life Insurance Co.*, 161 Tenn. 655, 32 S.W.2d 1034 (1930). When employees contribute part of the premium and are issued a certificate by the insurer, there is also a contractual relationship between the employee and the insurer. *Smithart v. John Hancock Mutual Life Insurance Co.*, 167 Tenn. 513, 527, 71 S.W.2d 1059, 1064 (1934). To determine the intent of the parties, the master policy and the certificate are to be construed and enforced together. *Id.*

Plaintiff raises two questions in support of her insistence that the order of summary judgment for defendant be set aside and that her motion for summary judgment be sustained. Plaintiff also requests an additional twenty five percent (25%) penalty under Tenn.Code Ann. § 56–7–105(a) because the attempt to settle a $25,000 claim for $9 goes beyond interpretation of the policy and was fraudulent action by defendant; therefore, not in good faith.

In support of her request that the summary judgment in favor of defendant be reversed, plaintiff first argues that because she was issued a Certificate of Insurance she was covered under the policy. She points to language in the Master Policy that says the "Company will issue to the organization, for delivery to each insured, a certificate ...." Plaintiff argues that the language in the Master Policy does not authorize issuance of a certificate to one who is not insured. Therefore, since she was issued a certificate, she was an insured.

Contracts must be read in their entirety. The language to which plaintiff points is not concerned with the effective date of the policy, but rather with the allocation of responsibilities of the contracting parties. There is no reason to strain

---

1. There is no evidence in the record regarding what the nine dollars represents other than the statement of plaintiff's supervisor that it was a rebate for the premium paid. However, plaintiff has not suggested that there are inferences to be drawn from the undisputed facts that make this an inappropriate case for summary judgment. *See Prescott v. Adams*, 627 S.W.2d 134, 139 (Tenn.App.1981).

the language of that section of the policy so it can be read as addressing the effective date of the policy when another section of the policy application specifically says "Individual insurance shall not become effective until the first day of the month next following the date the application is received during any enrollment period."

Plaintiff also argues that the certificate contains language that indicates "that the person identified in the attached enrollment form (herein called the insured) is insured and subject to the terms, conditions and limits of the policy as above specified...." Plaintiff argues that since her enrollment form was attached to the certificate, she is unequivocally an insured under the language of the policy. Unfortunately for plaintiff, that language is in the first paragraph of the certificate and the language on the preceding page contains the terms and conditions that the "insurance will take effect on the first day of the month after receipt of your application."

Plaintiff argues that Durango Boot has authority to insure its employees without knowledge of the insurance company because it has up to forty five days in which to send the insurance company a list of additions or terminations and the applicable premium. We see nothing in this provision that indicates when an individual policy becomes effective. This provision concerns the responsibilities of the employer to forward the names of employees who sign up for insurance, to forward the list of employees who terminate their insurance, and to forward the premiums.

■ Plaintiff has not cited, nor have we found, any case that states that the mere issuance of a certificate means the insurance is in effect. Indeed, that would be particularly inappropriate in this case since the booklet which contains the certificate also contains information explaining the policy's terms and coverage to employees. In this case the issuance of the certificate has no effect on the commencement of coverage. Plaintiff's first issue is without merit.

Plaintiff next argues that the Master Policy's wording that "individual insurance will become effective on the first day of the month next following receipt of application" meant that the policy began on June 5, 1982, which according to plaintiff's reading is the first day of the month after June 4, 1982.

Plaintiff, in her brief, argues that the phrase is ambiguous and must be construed most strongly against the insurer. *Palmer v. State Farm Mutual Automobile Insurance Co.*, 614 S.W.2d 788 (Tenn. 1981). At other times, both in the brief and at oral argument, counsel for plaintiff argues that the language is not ambiguous and is subject to only one interpretation. We will discuss both sides of plaintiff's language argument together.

■ There must be two reasonable constructions of the language before the Court can find ambiguity and construe the policy toward the insured. *Harkavy v. Phoenix Insurance Co.*, 220 Tenn. 327, 417 S.W.2d 542 (1967). The "rule requiring construction of the language of an insurance policy most strongly against the insurance company" does not authorize the "creation of an ambiguity where none exists." *Winecoff v. Nationwide Mutual Insurance Co.*, 223 Tenn. 267, 273, 444 S.W.2d 84, 87 (1969).

■ We do not find an ambiguity in the language of the Master Policy read alone, the language of the booklet-certificate read alone, or between the policy and the booklet-certificate read together. The language of an insurance contract must be given its plain and ordinary meaning. *See Guardian Life Insurance Company of America v. Richardson*, 23 Tenn.App. 194, 129 S.W.2d 1107 (1939). That is, it must be read as a layman, not as a Philadelphia lawyer, would read it. *Harkavy v. Phoenix Insurance Co.*, 220 Tenn. at 337, 417 S.W.2d at 546 (1967).

The words of the Master Policy, "individual insurance shall not become effective until the first day of the month next following the date the application is received during any enrollment period," are clear. The

insurance went into effect on July 1, the first day of the month after June.[2] The language of the booklet, "first day of the month after receipt of [the] application," is likewise clear and means the same thing.

Our research reveals no Tennessee cases which interpret language similar to the language in question here. There are cases in other jurisdictions which interpret similar but not identical language. All of these cases found similar language to be unambiguous and to mean the first day of the following month. The language in the cases in other jurisdictions differ from that in our case because the word "month" is modified by either "calendar" or "insurance." While we are aware that the language is somewhat different, the reasoning of those courts is still useful.

In *Massachusetts Mutual Life Insurance Co. v. DeSalvo*, 174 Colo. 115, 482 P.2d 380 (1971), the insurance contract provided that "the date of [an employee's] eligibility shall be the first day of the calendar month coincident with or next following the date of such transfer." The Court stated unequivocally: "[T]he date of eligibility is the first day of the month following the date of transfer." 174 Colo. at 123, 482 P.2d at 384. Since the employee's transfer was in late August, the date of eligibility was September 1.

In *Mercer v. Aetna Life Insurance Co.*, 3 Kan.App.2d 257, 593 P.2d 23 (1979), employees were eligible on the first day of the calendar month following the completion of one full calendar month of continuous employment. The employee began work on July 7th and died on August 31. His beneficiary made an argument similar to plaintiff's argument: one full calendar month would be August 7th and the first day of the calendar month would be August 8th. The Court discussed the term "calendar month" in depth and then concluded the "first day of the calendar month" means the number one day of a month. 3 Kan. App. at 259, 593 P.2d at 25. The employee

was not covered under the policy until September 1.

In *Shaw v. Banker's Life Company*, 213 So.2d 514 (Fla.Dist.Ct.App.1968), the insurance policy provided that the effective date of the policy was "on the first day of the insurance month coinciding with or next following ... the date of the request." The appellant contended that the words, "coinciding with or next following," modified "insurance month." The Court held that that construction was unreasonable and that "coinciding with or next following" modified "first day of the insurance month." The Court held that the meaning of the contract was "clear under the ordinary rules of English ...." *Id.* at 515.

■ Here, the language of the insurance policy is clear and unambiguous. It would be necessary for us to twist and strain the "ordinary rules" of the English language to find the "first day of the month next following the date the application is received" to be June 5. Furthermore, the booklet states that the effective date is the "first day of the month after receipt of your application." We think this means "day number one." Moreover, there is further evidence in the Master Policy that the insurance was not to go into effect on any day other than "day number one" of any month. The policy specifically says there will be "no charge or credit ... for fractional parts of a policy month with respect to additions." This issue is without merit.

In view of our holding, we pretermit plaintiff's issue relating to the penalty under Tenn.Code Ann. § 56–7–105(a).

The judgment of the Trial Court granting defendant's motion for summary judgment is affirmed with costs taxed to plaintiff and the cause remanded for the collection of costs and any further necessary proceedings.

TODD, P.J., M.S., and CANTRELL, J., concur.

---

2. The Master Policy and the booklet both failed to specify whether the application must be received by the employer or the insurance company. That is not an issue in this case because plaintiff filled out the enrollment form on June 4 and it was received by the insurance company on June 23. Therefore, under either interpretation, receipt by the employer or receipt by the insurer, the application was received in June.