# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**June 29, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

| | | |
|---|---|---|
| **JESSICA WEIL,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Circuit No. 87231 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9804-CV-00098 |
| **JOHN GAIA, JOSHUA COLE, and** | ) | |
| **MICHAEL WARE,** | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **STATE FARM INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| Unnamed Defendant/Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE KAY S. ROBILIO, JUDGE

For the Unnamed Defendant/Appellant,    For the Plaintiff/Appellee:
State Farm Insurance Company:

J. Kimbrough Johnson              Marc A. Sorin
Memphis, Tennessee                Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

__________________________________________OPINION

This is an interlocutory appeal in a personal injury case. The plaintiff passenger in an uninsured vehicle was injured by a gunshot from the driver of another uninsured vehicle. The injured plaintiff filed suit against the drivers of both vehicles and sought coverage under the uninsured motorist provision of her automobile insurance. The defendant insurance company filed a motion to sever the insurance coverage question from the tort action and deny coverage. This motion was denied by the trial court. The insurance company appeals. We reverse.

The facts of this case are undisputed. On May 4, 1996, Plaintiff/Appellee Jessica Weil ("Weil") rode to a friend's house in an uninsured car driven by Michael Ware ("Ware"). Ware brought his Rottweiler puppy along with him to the friend's house. The friend, who was not fond of dogs, asked that Ware put the puppy in her backyard. When Weil and Ware left the friend's house, they discovered that the puppy had escaped from the backyard. Ware left on foot to go search for the dog. He returned shortly with the puppy. Weil and Ware got in Ware's car to leave. Ware was driving and Weil was the passenger. As they were driving away, they heard someone screaming at them from another car. Weil later discovered that this person was Defendant John Gaia ("Gaia"). She had never met him, but knew who he was. As Weil and Ware drove off, Gaia chased them in his car. Gaia tried to run Weil and Ware off the road by ramming Ware's vehicle with his own car. At stoplights, Gaia continued to scream at Weil and Ware. Ware then entered the highway; Gaia followed. Once on the highway, Gaia pulled out a 9 mm pistol and shot into Ware's car. When Gaia fired into Ware's car, Gaia's car was traveling near the left rear panel of Ware's car. Weil was hit in the back and suffered permanent serious injuries. Weil's injury was caused only by the gunshot wound; she was not injured on the occasions when Gaia rammed Ware's car with his own. Neither Gaia nor the car he was driving were insured at the time of the accident.

Weil filed a lawsuit seeking damages for her personal injuries. Named as defendants were Michael Ware, John Gaia, and Joshua Cole, the owner of the vehicle driven by Gaia. Weil sought $1,500,000 million dollars in compensatory damages from each defendant.

At the time of the incident, Weil had automobile insurance with State Farm Insurance Company ("State Farm"). Weil's personal injury lawsuit against the above named defendants was served on State Farm under Tennessee's uninsured motorist statute. *See* Tenn. Code Ann. § 56-7-

1206(a) (1994).[1]  Weil sought to recover damages under the uninsured motorist provision of her automobile insurance policy for the injuries caused to her by Gaia, an uninsured motorist.  In State Farm's answer, it denied coverage to Weil under the uninsured motorist provision and sought a determination of its coverage obligation under the policy.  In the alternative, State Farm asserted that Weil's complaint sought damages in excess of the coverage limits of the policy and that she was not entitled to recovery in excess of those limits.  Finally, State Farm contended that Weil's injuries were not "caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle," and therefore her injuries were not covered by the insurance policy.  The State Farm uninsured motorist policy provision reads:

> We will pay compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.  The bodily injury must be caused by accident arising out of the operation, maintenance or use of uninsured motor vehicle.

The above provision is the only policy provision applicable to this case.

State Farm filed a motion to sever the insurance coverage question from the tort action and deny coverage.  This was denied by the trial court.  Several days after the trial court denied State Farm's motion, Weil filed a motion to proceed directly against State Farm pursuant to Tennessee Code Annotated § 56-7-1206(d).  Tennessee Code Annotated § 56-7-1206(d) provides that,

> In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in such a case.

---

[1]  The relevant portion of the uninsured motorist statute reads:

> Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection shall prevent such owner or operator from employing counsel of the owner's own choice; and provided further, that the evidence of service upon the insurance carrier shall not be made a part of the record.

Tenn. Code Ann. § 56-7-1206(a) (1994).

Tenn. Code Ann. § 56-7-1206(d) (1994). Weil's motion indicated that the summons to all three named Defendants in her complaint were returned "not to be found." The trial court granted Weil's motion. State Farm then filed a motion for interlocutory appeal, which resulted in this appeal.[2]

The sole issue for review is whether Weil's injuries were "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle," thus allowing plaintiff to recover under the uninsured motorist provision of her insurance.

Insurance contracts are subject to the same rules of construction as applied to contracts generally. *See McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Constr., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. *See Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn. App. 1986).

Tennessee caselaw sets forth the analysis for vehicle-related assaults and accidents involving firearms. *Travelers Insurance Co. v. Aetna Casualty and Surety Co.*, 491 S.W.2d 363, 365 (Tenn. 1973), states that the court is to first determine whether the use of the vehicle is a proper one. If the use is "proper," the court must then determine whether there is a causal connection between the use and the injury. *See also Anderson v. Bennett*, 834 S.W.2d 320, 323 (Tenn. App. 1992) (noting that "the *Travelers* analysis . . . requires this Court to determine whether the use of the vehicle was proper before addressing the causation issue"). In interpreting the phrase "arising out of the use" of the vehicle, *Travelers* notes that the term "has generally been held to be a broad, comprehensive term meaning 'origination from,' 'having its origin in,' 'growing out,' or 'flowing from.' . . . The term 'use', then, has been a general catch-all term construed by the courts to include *all proper uses of a vehicle*." *Travelers*, 491 S.W.2d at 365 (emphasis added) (citations omitted).

"The legal issue of whether an accident arises out of the use or maintenance of an automobile is a recurring question which defies a simple test. Instead, each case presenting such a question

---

[2] The record is unclear as to the basis for State Farm's motion for interlocutory appeal. Although the motion appeals the trial court's "Order denying State Farm's Motion for Summary Judgment," the only motion in the record filed by State Farm was its motion to sever and deny coverage. Moreover, this Court's order granting permission for interlocutory appeal is based on the trial court's order denying State Farm's motion to sever and deny coverage.

must, to a great degree, turn on the particular facts presented." ***Continental W. Ins. Co. v. Klug***, 415 N.W.2d 876, 877-78 (Minn. 1987) (citations omitted).

State Farm argues on appeal that the injury is not covered under its uninsured motorist provision because the injuries were not "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle," citing ***Anderson v. Bennett***, 834 S.W.2d 320 (Tenn. App. 1992). In ***Anderson***, a man fired a bullet from his car in the direction of a group of children and hit one child. ***See id.*** at 321. The appellate court affirmed the trial court's denial of coverage for the child under the uninsured motorist provision of the child's family policy, reasoning that the use of the vehicle to discharge a weapon was not a "proper or normal" use of the vehicle for purposes of insurance coverage. ***See id.*** at 323.

Weil argues that ***Anderson*** is distinguishable on its facts because, in ***Anderson***, the car driven by the defendant was merely the situs at which the shooting occurred. In contrast, in this case, Weil argues, the car driven by Gaia was an instrumentality of the shooting. Weil claims that the "act of Mr. Gaia's shooting from the uninsured vehicle he was driving clearly 'flows from' or 'grows out of' the use of the vehicle" and that "but for" the use of Gaia's car to chase Weil and Ware, the shooting could not have taken place.

Weil cites ***State Farm Mutual Automobile Insurance Co. v. Davis***, 937 F.2d 1415 (9th Cir. 1991). Although ***Davis*** applied California law, it observed that both Tennessee and California caselaw were the same in that both states "require a slight causal connection between an insured vehicle and a shooting injury before the injury may be held to 'arise out of the use' of the insured vehicle." ***Id.*** at 1419. In ***Davis***, a passenger in a van shot into another moving vehicle, injuring the passenger in the other vehicle. ***See id.*** at 1417. Relying on California caselaw, the court concluded that the California Supreme Court would find insurance coverage because the use of the van was not incidental to the shooting. ***See id.*** at 1420. The van provided the means of chasing the other car and the means of escape, and therefore was "more than minimally connected with the injuries . . . suffered." ***Id.***

4

In this appeal, to determine whether Weil can recover under the uninsured motorist provision of her policy for the serious injuries inflicted by Gaia, we must ascertain whether both prongs of the *Travelers* test, proper use and causation, are met. [3] *See Travelers*, 491 S.W.2d at 365.

Under *Travelers*, the first inquiry is to determine whether Gaia's use of the vehicle was proper. *See id.* Gaia used the vehicle to pursue and ram the car Ware was driving, in which Weil was a passenger. Weil was not injured during these activities. Her injury occurred when Gaia fired a gun into Ware's car from Gaia's moving vehicle. Therefore, the focus is on Gaia's use of the vehicle in shooting at the Ware vehicle. In *Anderson v. Bennett*, 834 S.W.2d 320, 323 (Tenn. App. 1992), this Court held that the defendant's use of a vehicle to shoot in the direction of a crowd of children "was not a proper or normal use of the vehicle as required by *Travelers*."

Weil attempts to distinguish *Anderson* by arguing that the automobile being driven by the defendant in that case was merely the situs of the shooting, while the vehicle driven by Gaia was an instrumentality of the shooting. However, this argument goes to the causation prong of the *Travelers* test, rather than the proper use prong. *State Farm Mutual Automobile Insurance Co. v. Whitehead*, cited by Weil states, "Coverage was denied in *Cameron* because the pickup was merely the 'situs' or 'locus' of the accidental discharge of the rifle and thus there was no 'causal connection' between its discharge and the use of the vehicle." 711 S.W.2d 198, 201 (Mo. App. 1986) (referring to *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13 (Mo. App. 1980)).

Similarly, *State Farm Mutual Automobile Insurance Co. v. Davis*, also cited by Weil, is inapplicable. Although *Davis* observed that California law and Tennessee law are the same in that both "require a slight causal connection between an insured vehicle and a shooting injury before the injury may be held to 'arise out of the use' of the insured vehicle," *Davis* relied on California caselaw without discussing Tennessee's two-prong test requiring a finding of proper use of the vehicle before causation is addressed.

Likewise, the other cases cited by Weil, although factually similar to this , do not analyze coverage under the two-prong *Travelers* test. *See Continental W. Ins. Co. v. Klug*, 415 N.W.2d

---

[3]    Tennessee caselaw differs from that of other states in this area because it requires a finding of proper use before causation is addressed. In most other jurisdictions, the question of use is intertwined with the causation issue. *See* Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What Are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10 (1982). An adequate nexus of causation is usually found where an individual shoots from a moving vehicle into another moving vehicle. *See id.*

876, 878 (Minn. 1987) (using a three prong test to determine insurance coverage, in which the third prong, considering the type of use of the automobile, is only reached after causation is established); *State Farm Mut. Ins. Co. v. Whitehead*, 711 S.W.2d 198, 201 (Mo. App. 1986) (finding that coverage existed because a causal connection was present without first finding that the use of the vehicle was normal or proper).

In this case, Gaia used his vehicle to chase Ware's car, and to fire a weapon at Ware's car. In view of *Anderson*, we must conclude that Gaia's use of his vehicle to fire a weapon at Ware's car was not a proper use under the uninsured motorist provision of Weil's insurance policy. This holding makes it unnecessary to reach the issue of whether there was a causal connection between Gaia's use of his vehicle and the shooting. Therefore, Weil's injury was not "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle," within the meaning of her insurance policy and State Farm is not obliged to provide coverage to her under the uninsured motorist provision. The decision of the trial court must therefore be reversed.

The decision of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs are taxed to Appellee, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**

6